UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.00-6018-CR-FERGUSON

UNITED STATES OF AMERICA,    :

    Plaintiff,    :

vs.    :

GLENDRICK LOMAX,    :

    Defendant.    :
_____/

NIGHT BOX
FILED

FEB 10 2003

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

## MOTION TO SUPPRESS

Glendrick Lomax ("Lomax"), by counsel, hereby files this Motion To Suppress for the following reasons:

### FACTS

On January 18, 2000, Lomax was indicted by a Federal Grand Jury and charged with 18 USC §922 (g)(1); Possession of a firearm by a convicted felon. On December 26, 2002, the Government filed a Notice of §924(e) Enhancement; the Armed Career Criminal Act. Those charges are based on an arrest of Lomax on December 1, 1999.

The Government alleges that on December 1, 1999, at 11:57 pm, Lomax was observed by two uniformed Broward Sheriff Deputies, in an unmarked car, walk up to a car that had stopped at 20 SW 4th Ave, Dania Beach, Fl. They further allege that Lomax "began to engage the driver in conversation". It appeared to the Deputies that " a possible drug transaction was in progress." The



Deputies "approached Lomax on foot to ascertain if he belonged there..." Lomax "appeared to get very nervous and began backing away." Lomax was told to "put his hands in front of him in view so [we] could confirm he did not have a weapon." He did not comply and was ultimately arrested. A gun was found in the small of his back.

The defendant alleges that the arrest was without probable cause. There were no drugs found and no drug transaction was taking place. Lomax, who lived across the street from where the arrest took place, "belonged" in the area, and was not doing anything unlawful at the time of the arrest. The Broward Sheriff Deputies did not have a "reasonable, articulable suspicion of criminal activity"

## Law

Under the Fourth Amendment, every search or seizure by a government agent must be reasonable. (U. S. Const. amend IV). The Supreme Court has generally interpreted this requirement to mean that an arrest or search must be based on probable cause and executed pursuant to a warrant. (*See Katz v. U. S.*, 389 U. S. 347 (1967)). There are, however, many exceptions to the probable cause and warrant requirements, including investigatory detentions, warrantless arrests, searches incident to a valid arrest, seizure of items in plaint view, exigent circumstances, consent searches, vehicle searches, container searches, inventory searches, border searches, searches at sea, administrative searches, and searches in which the special needs of law enforcement make the probable cause and warrant requirements impracticable.

An investigatory detention, a brief seizure by police based on reasonable suspicion of criminal activity, is a "narrowly drawn" exception to the probable cause requirement of the Fourth Amendment. (*U. S. v. Sharpe*, 470 U. S. 675, 689 (1985)) (Marshall, J., concurring). In *Terry v.*

*Ohio*, the Supreme Court held that a police officer may stop an individual reasonably suspected of criminal activity, question him briefly, and perform a limited pat-down frisk for weapons. (392 U.S.1, 22-24 (1968)). The Court emphasized the importance of balancing "the need to search (or seize) against the invasion which the search (or seizure) entails." Under this balancing approach, important government interest can justify a brief investigatory detention on less than probable cause.

Law enforcement officers may initiate an investigatory detention only if they have reasonable, articulable suspicion of criminal activity. To meet this standard, the government must point to specific and articulable facts, together with rational inferences drawn from those facts, that reasonable suggest criminal activity has occurred or is imminent. Inarticulable hunches or generalized suspicions are insufficient. *See Ybarra v. Illinois*, 444 U. S. 85, 92-93 (1979) (no reasonable suspicion to detain partron, even though police had warrant to search tavern and had generalized suspicion that drug transactions took place in tavern, because no indication that patron was armed); *See, e.g., Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir. 1992) (no reasonable suspicion to stop driver who was double-parked with 10 feet of pedestrian at drug trafficking location); *Diamondstone v. Macaluso*, 148 F.3d 113, 124 (2d Circ. 1998) (no reasonable suspicion to stop driver who refused to provide insurance information on 2 earlier traffic stops); *U. S. v. Jones*, 149 F.3d 364, 367 (5th Cir. 1998) (no reasonable suspicion to stop truck even though covered in fresh mud 80 miles from Mexican border and driver repeatedly looked into rearview mirror); *U. S. v. Caicedo*, 85 F.3d 1184, 1190 (6th Cir. 1996) (no reasonable suspicion to stop arriving bus passenger who appeared nervous in presence of police); *U. S. v. Johnson*, 170 F.3d 708, 715-20 (7th Cir. 1999) (no reasonable suspicion to stop person who walked out of apartment while police were listening outside door and planning to knock and ask

permission to enter); *U. S. v. Halls*, 40 F.3d 275, 276 (8th Cir. 1994) (no reasonable suspicion to stop person who avoided eye contact and drove car with no noticeable luggage and out-of-state license plates); *U. S. v. Garcia-Camacho*, 53 F.3d 244, 246-47 (9th Cir. 1995) (no reasonable suspicion to stop Hispanic males in heavy truck near border who looked nervous, did not acknowledge police presence, and drove faster than flow of traffic); *U. S. v. Davis*, 94 F.3d 1465, 1470 (10th Cir. 1996) (no reasonable suspicion to stop man who parked outside known criminal establishment, made and broke eye contact with police, kept hands in pockets, did not stop when officers requested, and had a criminal record); *U. S. v. Smith*, 799 F.2d 704, 707-08 (11th Cir. 1986) (no reasonable suspicion to stop driver who failed to look at patrol car late at night, even though that act fie drug-courier profile on which officer was acting).

Generalized fear of criminal activity and the presence of a suspect in a high crime neighborhood are factors that, standing alone, do not justify seizure. *See Brown v. Texas*, 443 U. S. 47, 52 (1979) (no reasonable suspicion to stop person based solely on presence in neighborhood known for drug activity).

Generalized suspicion of criminal activity based solely on race also does not justify seizure. *See U. S. v. Brignoni-Ponce*, 422 U. S. 873, 885-86 (1975) (no reasonable suspicion for border agent to detain person based solely on apparent Mexican ancestry); *See, e. g., U. S. v. Grant*, 920 F.2d 376, 388 (6th Cir. 1990) (no reasonable suspicion to detain person when agents' only indicia of suspicion were assumption that man of color wearing dreadlocks was illegal alien from Jamaica and fact that he traveled from drug-source city); *Buffkins v. City of Omaha.* 922 F.2d 465, 470 (8th Cir. 1990) (no reasonable suspicion when informant's tip merely described race of person and person carried toy

animal that appeared to be resewn); *Orhorhaghe v. INS*, 38 F.3d 488, 497 (9th Cir. 1994) (no reasonable suspicion for INS agent to seize person based solely on "Nigerian-sounding name"); *U. S. v. Tapia*, 912 F.2d 1367, 1371 (11th Cir. 1990) (no reasonable suspicion supported detention of vehicle beyond citation for speeding, even though suspect, who was Mexican and had out-of-state license plates, appeared visibly nervous during confrontation with officers and had few pieces of luggage).

When actions by the police exceed the bounds permitted by reasonable suspicion, the seizure becomes an arrest and must be supported by probable cause. (*Florida v. Roger*, 460 U. S. 491, 502-03 (1983). The Supreme Court has declined to establish a "bright-line" rule to determine when a *Terry* stop becomes an arrest, instead leaving the issue to the lower courts to decide on a case-by-case basis. (*See Sharpe*, 470 U. S. at 685). In making such decisions, courts consider the diligence of police in resolving their reasonable suspicion as quickly as possible, the scope and nature or the restraints place on an individual's liberty, and whether police transported the detainee to another location. (*See Sharpe*, 470 U. S. at 687-88, *U. S. v Place*, 462 U. S. 696, 709-10 (1983).

Under *Terry*, a police officer who makes an investigatory detention may conduct a limited pat-down frisk of a suspect. The frisk may only be conducted if the officer has a reasonable belief that the detainee poses a threat to the officer's safety or the safety of others. The frisk must be limited in scope to a search for weapons and may not be used to search for evidence of criminal activity.

It is the position of Glendrick Lomax that the Broward County Sheriff Deputies did not have an articulable suspicion that anything illegal was happening. At most they had "bare suspicion", clearly insufficient to allow a warrantless search in this case. Lomax lived in the area, no drug deal

was observed and he was minding his own business. The Broward County Sheriff Deputies acted too soon. If they had waited, they would have observed no illegal activity by Lomax or the people in the car.

Wherefore, Glendrick Lomax moves this Court to suppress the gun unlawfully seized in this case.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
Samuel J. Smargon
Assistant Federal Public Defender
Florida Bar No. 150230
1 E. Broward Boulevard
Suite 1100
Fort Lauderdale, Florida 33301
(954) 356-7436
(954) 356-7556 (fax)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed on this 10 day of February, 2003 to Terry Lindsay, Assistant United States Attorney, 299 E. Broward Blvd., Fort Lauderdale, Florida 33301.

_____
Samuel J. Smargon

S:\SMARGON\Lomax\suppress.01.wpd